Good morning, Your Honors. May it please the Court, my name is Thomas Fink. I represent the appellant, Scott Creasia, who is the defendant in the court below. I also represent Mr. Creasia at the trial phase. Your Honors, my client was convicted of filing false income tax returns. I'd first like to address the sufficiency of the evidence argument. It was the first issue raised in our brief. Your Honors, this is the issue before this Court, is whether any rational jury could have found the elements of this offense. My client raised in the trial court the defense that he relied upon a qualified accountant. Under this Court's precedence in the Bishop case, that is an absolute defense to filing false tax returns. The evidence viewed in the light most favorable to the government shows as follows. And there are four elements to the Bishop test. First, that the taxpayer made a full and complete disclosure of his tax-related information. These are the four elements under the Bishop test. There is no doubt and there is no dispute, viewing the evidence in the light most favorable to the government, that Mr. Creasia did just that. Mr. Creasia had a plumbing business. The government never alleged that as far as Mr. Creasia's plumbing business, that Mr. Creasia ever provided false information to his accountant, whose name is Mr. Lyndon Bridges. Mr. Creasia, in his plumbing business, without dispute, accurately reported his revenues, his receipts, and his expenses. He didn't... Not so with his other investments, though. Which other investments, Your Honor? Real estate investments. No, Your Honor. There is no dispute in the record that as to the information that Mr. Creasia provided to Mr. Bridges, from his own personal information, whether it's his plumbing business, his stocks, his real estate, that all of that was accurately presented to the accountant. Well, what you're saying is that even though the tax preparer had this dummy organization worked up so he only had to account for 25 percent of his income, that doesn't count so long as he gives the plumbing business records correctly to the tax preparer. That's your argument. Well, that counts, but, I mean, the first element of the test is, you know, the things that I know is... But if that element is necessary, if it's required, then by your argument, the case goes no further. In other words, so long as he gives all the information to the tax preparer, logically from the plumbing business, no matter what happens after that, he's home free, he gets a defense verdict. That goes to the fourth element of the test, Your Honor. And so my answer to that is you are correct, that is relevant. But all of what you're describing, the dummy corporations, the phony information that was on the tax return, all of that came from Mr. Bridges, the accountant. And under the fourth element of the test is, you know, and viewing the evidence in the light most favorable to government, that's all false, bad, dummy information on the tax return. The fourth element of the test is, did the taxpayer have reason to know that what his accountant was doing? And all that came from Mr. Bridges was false. Okay. Or wrong. So, you know. Why isn't there reasonable inference? Why couldn't a rational juror reasonably infer that when you know you have a phony corporation, that that's going to lead to a phony return? First, in this particular case, the government, unlike any other tax case, criminal tax case that I've seen, presented no evidence that the accountant ever explained the tax returns to the taxpayer. The government never called a trial the accountant as a witness. So there's no evidence that what was on those tax returns was ever explained to Mr. Kreatia. And, you know, the answer to your question, Your Honor, is, you know, you look at what we've attached as the excerpts of record in this case, which are Mr. Kreatia's tax returns. You know, it's this. It's pages 21 to 82 of our excerpts of record. And the evidence viewed in the light most favorable to the government is that none of this was ever explained to Mr. Kreatia. I mean, Mr. Kreatia had always, had never prepared his own tax returns. Mr. Kreatia had been a sole proprietor, had very simple tax returns prepared. But my answer to you, Your Honor, is, you know, you look at this. You look at this, and you tell me whether you can understand this. You know, I looked at this, you know, ten times. I'm sure, I'm still not sure I understand this. You look at what, at these tax returns, and respectfully, and you tell me whether a rational jury could decide that a plumber with a high school education who had never prepared his own tax returns. Doesn't that require the inferences to be drawn in your favor and not the government's? I mean, basically, your argument is, let's use common sense. The inferences have to go in favor of your client. But that's not the test on appellate review, once you've had a conviction. You have to draw the inferences the other way. The inference can be drawn, you know, has to be drawn under the legal standard in the light most favorable to the government. But there is a special emphasis in criminal tax cases on the element, the intent element of willfulness. And that's, it's a knowing and intentional violation of a known legal duty. It's a special emphasis on intent that's present in these type of cases. It really isn't present in other cases. And that's because this stuff is, you know, is really, really complicated. And it's, these are. But the concept that you would only report 25% of what you're actually making isn't very complicated. Assuming, assuming, assuming you read this or it was explained to you and you understood it. Well, that's an inference that the jury is entitled to draw in favor of the government, isn't it? That he read it and that he knew he was only reporting 25% of his income? That's true. But, no, the inference is that he read it. All right. The inference is that he read it. And the jury can draw the inference that he understood it. My request to the Court is, you know, if you can't read this and understand it, you know, how could a rational jury conclude that my client read this and understood it? You know, you've all got higher legal educations. You know, if you can't, this was the evidence that the government presented. This was it. That wasn't the only evidence. There was evidence that he admitted that he hadn't reported loan transactions. And there was other evidence besides just these documents. The loan transactions, all that were documents that were solely, things that were solely created by his accountant. You know, those weren't things, personal loan documents that he created and provided to his accountant. Those weren't anything having to do with his plumbing business. Everything that you're describing is something that was generated by his accountant. And those are also attached as excerpts of record. And, you know, it's another 80 pages of indecipherable. It's like a proxy statement. So, yes, you know, you are correct. The inference to be drawn in the light most favorable to the government is that my client had these documents. There was no evidence that they were ever explained to him. But that these exhibits, and this was really their whole case, putting these exhibits into evidence, in the light most favorable to the government, he had them and read them. Well, you know that he did that. I mean, you have to, I mean, that's, he wrote his former accountant and corrected material on his tax return. So he's not a taxpayer who just signed off blindly, at least according to the documentary evidence, right? He wrote his, he had, there was an issue with this accountant, actually, about whether or not some of his own personal stock transactions were reported correctly. Yeah, so, I mean, all the circumstantial evidence would indicate that he read his own return. And you have to draw that inference. Yeah. Yeah, I mean, I agree. And so, you know, it's a very simple thing where you can place yourselves in his same position, drawing that inference that he read it, and, you know, and take a look at this and see whether, you know, take a look at this and see whether you can understand how this income is being divided up 75 percent and 25 percent of that deduction occurred. I mean, this is indecipherable. And based upon that, we feel that the jury substitutes some other legal standard, other than the legal standard supported by the court. You know, there is, this is a guy who had always filed, always paid, never prepared his own tax returns, always gone to qualified accountants. This one, he went last two times, he went to a certified public accountant. He had never falsified anything from his own personal position. And this is a five-and-a-half-year investigation. Well, the IRS poured over every single aspect of this man's life, turned over nothing, absolutely nothing, including five interviews with the taxpayer where he was unrepresented by counsel, turned up absolutely nothing where the taxpayer or the defendant ever expressed, you know, any problem, any issue, tax protester type stuff. He wanted to reduce his taxes, so he started forming these bogus partnerships and getting loans from fictitious companies, and then he reported them. I mean, that's, if you buy the government's case, inferentially, right? Well, first, there's nothing wrong with wanting to reduce your taxes. Tax avoidance is legal. Tax evasion is illegal. Nothing wrong with wanting to reduce your taxes. But everything that's on these returns that is illegal in nature, that is false and phony, everything that is on these returns that is false and phony had its sole genesis and origin with his accountant. And, incidentally, as I point out in my brief in connection with the second argument, everything that's phony and false on those tax returns was created by his accountant as part of a very wide program by this Anderson Arc organization that did this for. . . Let's see how that helps you. Suppose there is a big scheme, and suppose 9 out of 10 people are fooled by it. It doesn't mean necessarily that the 10th person was fooled. The 10th person could say, gee, I understand this. This is a grand scheme to cheat the government, and I think I'll ride along. It's just the fact that it fooled some people doesn't necessarily mean it fooled him. That's correct. But in the Seattle case, in that case, I mean, it's, you know, he is specifically referenced. And his tax returns, and he is specifically referenced as among, you know, the persons who were the directed at that fraud. And, you know, the filing of his tax returns, the creation of these false documents, by this Anderson Arc organization is specifically referenced among the overt acts of that case. And so the government in that case, you know, took that position that there was a scheme to defraud him. And, you know, the only thing that we don't have is in a conspiracy case, in the Seattle conspiracy case, the government has to prove an agreement, and it only has to prove one overt act. They alleged over 300, including the acts to defraud him. And we don't have special verdicts where the jury tells us, you know, we don't have special verdicts where the jury tells us, well, these are the acts that we found to be fraudulent. I'd like to reserve three minutes of my time. Thank you very much. Thank you. May it please the Court, Counsel, my name is Gregory Davis for the United States. Judge Wallace, you're happy to go. Happy, I'm sure, that this is a simple tax case, not a complicated attempt to understand various deductions under 503C3 or other aspects, unlike the bankruptcy case that you were talking about earlier. Excuse me. My voice is kind of thin. The Court has basically made the government's arguments for us in terms of the sufficiency. Unless the Court has questions, I don't really think there's anything to add. We're asking questions. We weren't making arguments. Your question has made the government's points. How's that? It's a pretty thin circumstantial case on willfulness, it seems to me. What would you point to, other than what we've discussed, as indicia of willfulness in the record that would support a verdict? Well, first, you have a $675,000 loan that the defendant says, oh, I forgot about, or someone told me I didn't have to repay it. If someone told him he didn't have to repay it, that means it's not real, and so any deductions related to that loan are false. The fact that he knew it wasn't real is reflected by the fact he omitted it from later credit applications. He knew it wasn't real, and he acted on that fact, and he just wanted the tax deduction. All of a sudden, around the time period when this starts, his income jumps dramatically. He was making around $100,000 a year, jumps to $350,000 a year. That's a strong incentive to cheat. The defendant also lied about why he fired his earlier tax accountant, Mr. Mather. He claimed that it was because of the result of an audit. In fact, the audit didn't happen until I believe it was at least six months after he claimed that he had fired Mather for that reason. In terms of plum plumbing limited liability corporation being false, defendant admitted that he received all of the income from that, and yet he only reported 25 percent on his tax return. A reasonable juror could conclude, considering all those facts together with others in our brief, that he knew what he was doing and that he was acting willfully, that is, and pay correct income taxes. Also, Your Honor, the Makina Blanca claimed that it would make a $675,000 loan irrespective of a person's credit. That simply begs no reasonable person would believe that here we're going to give you $650,000. No questions asked. That simply, it's further evidence that Mr. Creation knew that what he was getting into wasn't real. Also, I mean, in terms of the defendant's statements that Mr. Bridges didn't talk to him, didn't explain what was on the returns, you look at the returns he signed under penalties of perjury, that he had read them and reviewed them and understood them to the best of his ability. Also, you had testimony from Mr. Mather that when he was preparing, when Mr. Mather was preparing defendants' 1995, 96, and 97 returns, Mr. Mather went through and explained what was on the return. As the Court pointed out, also, the fact that the defendant noticed that there was a problem with the reporting of a stock gain indicates that he definitely was reading his returns and following and was aware of what was going in. Would you mind jumping ahead to the readback issue? Sure. The readback issue. You know, Richard seems to cut pretty, well, pretty wide swath. Richard has some unique facts that are very different from the facts here. First, the review is an abuse of discretion review. Although this Court in Richard has expressed as a preference that readback be of all of the witnesses' testimony, the Ninth Circuit. More than a preference. It was a fairly strong language in this. Well, earlier decisions of this Court, including Ponce and Nichol, proved of instances found that there was no abuse of discretion when there were limited readbacks. Nichol, I mean, let's also look at the difference in Richard and here. In Richard, the district court did not offer a cautionary instruction, not to focus on the particular testimony that was being read back. Here, Judge Jorgensen was very careful to explain to the jury that you, not to focus on just this particular testimony, but to consider all of the testimony that is before the Court. At the time of the readback or after the readback, did counsel for the defendant ask that any other part of the testimony of the defendant be read back? Counsel for the defendant requested originally and afterwards that the entire testimony be read back. But other than saying that there were particular other excerpts to be added to what the judge said, there was none of that. And, in fact, the district court started 10 pages before the defendant requested in order to provide what the district court described as more context for the jury. And you gave the, what was the nature of the cautionary instruction? The judge essentially emphasized that the jury was not to focus solely on the testimony that had been read back to the jury, but to consider all of the testimony and not to focus on the particular. Also. All the testimony pertaining to that topic from the witness was read back to the jury. Is that true? I beg your pardon? All the testimony relating to that topic was read back? That's our position. And the defendant has not said that anything was omitted that should have been included. This is also unlike Richard in that Richard, the jury in Richard asked to have the whole direct and cross-examination of the witness. Here, the jury specifically said, we only want to hear about defendant's testimony relating to the $675,000 loan. So this, Judge Jorgensen was not suggesting that the jury had to limit its request, unlike Judge Richard, unlike the judge in the Richard case where the judge basically said, tell me what portions you want and we'll have those read to you. Also, unlike Richard, the particular testimony, the $675,000 loan, that was not the only evidence that tended to prove defendant's guilt. Here, the $675,000 loan only related to 1998. It had nothing at all to do with 1999. Also, with respect to 1998, there was the testimony of the 75 percent of the Plum Plumbing LLC income that was not included on the return. So this is not Richard. The court, as I said, the court has certainly made it clear that it prefers that readbacks be of the entire testimony. But this particular case was not an abuse of discretion. As to the due process, that's where I was heading next, Your Honor. First, the government has never taken the position that the defendant was a victim of the mail-in wire fraud conspiracy. The fact that the paragraphs relating to the particular returns filed by defendant and the fact that Bridges assisted in preparing those returns never, the fact that those are included in the mail, incorporated in the mail fraud conspiracy and the substantive mail-in wire fraud counts doesn't convert those to an allegation that he was a victim. As Judge Graber said, not everyone has to be aware. Some people can be aware of what's going on and decide to go along. Hey, I want to get $500,000 of previous paid taxes back. This looks like a great opportunity. Yeah, I know it's illegal, but hey, I'll probably get away with it. So let's give it a shot. The fact that, I mean, the conspiracy under count one was a 72, was a conspiracy to commit, to defraud the IRS by filing, by aiding and assisting in the filing and preparation and filing of false tax returns. The substantive crime is 26 U.S.C. 72062. But a defendant, whether or not someone is guilty of aiding and assisting  has nothing to do with whether or not the person whose return is being prepared is aware of it. The statute specifically says that you can be, the person can be convicted under 72062 even if the person whose return is being prepared is aware of it. The elements are completely different. The defendant was convicted on 72061, which focuses on his willful conduct. The elements in the conspiracy counts look at agreements. There's no overlap in elements. What happened, what was proven in the Western District of Washington was the intent of, the agreement and the intent to agree by the principles in AAA. Right. But you'd agree that if, in the prosecution of Washington, if, in fact, for example, the allegation had been specifically made that Mr. Creacia was an unknowing victim. If he was a, if the government had alleged that he was a dupe. Regardless of whether the elements were the same or not, if the government had put into proof. That would then make this a case of inconsistent, of the government attempting inconsistent, making inconsistent arguments in two different cases. That's not the case here. The government has never alleged that he was a dupe. He wasn't listed on the restitution order. He wasn't listed. The defendant makes much of the fact that in the plea negotiations between Mr. Bridges and the government, there was nothing made, there was no indication, no statements were made that the defendant was aware of what was going on. But there was no reason to because that had nothing to do with the plea that Mr. Bridges had made. So. What's the current status of the Washington cases? Virtually all of the Washington cases have been completed. Mr. Wayne Anderson was convicted. I believe he's currently serving 20 years, a 20-year term of imprisonment. Keith Anderson was convicted. He's also serving, I believe, 20 years. Carolyn Grosnickle pled guilty, was found guilty and withdrew her appeal. James and Pamela Moran were convicted, but their convictions were reversed on appeal. I'm sure I'm forgetting several of them, but the cases, there's some habeas cases still pending. I'm just wondering whether the Washington case is a moving target or whether we can conclude that it is a conspiracy case and nothing else. The Washington case is done. The Washington case is finished. There's, I'm not aware, I mean, I'm obviously not privy to what the IRS is investigating. They've appealed? Well, they appealed and all of the appeals have been resolved and I believe time for search is finished. There are a couple of habeas that might still be pending. I see. But I believe that's, as far as I can remember, they're pretty much finished. Until we see the 2255s. Yes. And I get to see them first. So we might have fun together once again, Your Honor. Thank you. Thank you. Thank you once again, Your Honors. The problem with the partial readback was this. The jury came back and requested to hear all of my client's testimony. The judge denied that request. The judge said a transcript is not available. However, the judge on her own, sua sponte, suggested that a readback was possible. The jury then came back with another note. The second note said, well, we would like a partial readback of Mr. Creacia's testimony concerning this $675,000 loan. Defense objected. Defense asked for a full readback of the defendant's entire testimony. So the judge denied that objection. The judge decided to give a partial readback solely about that $675,000 loan. When you here today raised the willfulness issue with government's counsel and you asked, you know, what is your, tell me what willfulness was proved at the trial, the first thing that government's counsel brought up was that loan, that topic, that $675,000 loan. Is there any aspect of the testimony in the loan that didn't go before the jury in the readback? In other words, was the entire testimony read to the jury concerning that topic? I would say a fair answer would be yes. Yeah. And there's no suggestion by the defense side to read something else that would have any effect upon that loan, just the position stayed with the defense, I want it all read or none? Well, no. Indirectly, yes. I mean, the defendant's entire testimony discussed, you know, his knowledge about taxes, his background and his experience, you know, how he had gone about in the past learning about tax returns and how he had had them prepared. Yeah. I understand that. But I'm just wondering, is there anything in addition that the defense asked to have read back that would implicate or flesh out the loan situation other than that which was read to the jury? I would say a fair answer to that question is that everything directly regarding that $675,000 loan was, in fact, read back to the jury. But the argument, respectfully, is in a case which was weak on, very weak on willfulness, that the judge agreeing to do that, to allow the jury's question to be answered about that particular topic, gives, when a judge agrees to do that, the judge lends credence that that is a piece of evidence which deserves special emphasis. And that's the law. What's the test on standard of review for rereading part of the testimony? I believe it's a ‑‑ I believe. I have to look at my pleadings, but I believe it's abuse of discretion, yes. Abuse of discretion. So he had it read back, and he gave a cautionary instruction. And your position is it was an abuse of discretion because he didn't have it all read. Yes. And all of his testimony read. And by the judge doing that, the judge ‑‑ All his testimony. His testimony. Yes. Which is what the jury asked for in the first place. And it lends, it lends the judge's credibility that that is a particular piece of evidence which deserves special emphasis, undue emphasis. You know, after the jury is asked to hear everything, the judge then agrees to only let them hear one particular piece of evidence. So the jury comes in and says, we want to hear everything. The judge says no. The jury comes back and says, we want to hear this one particular topic. And the judge says yes. That's the problem. Now, if in Richard, the Richard court criticized the district court for not providing a cautionary instruction, the government's argument here is that that distinguishes Richard from this case. What's your response to that? It does in that sense. However, in this particular case, where the evidence ‑‑ we also have a sufficiency of the evidence argument, you know, and looking at it in the context of a case where it is very weak on willfulness, you know, I mean, it was. And where willfulness is so weak to allow the jury by the judge's credibility to focus on that one particular piece of evidence that supported the government's theory of the case most, you know, was an abuse of discretion. You know, that shouldn't have happened, A, in a case where willfulness was weak, and, B, in tax cases. Like I said before, you know, the willfulness element is just particularly important due to the complexity and sophistication of the tax code. Thank you, counsel. Thank you very much. The case should certainly be submitted, and we will take a 15‑minute recess. Thank you.
judges: Wallace, Thomas, Graber